IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEVIN L. COLEMAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 19-696-CFC |
| | : |
| OFFICER MICHAEL Q. STANFORD and OFFICER KRISTENE M. BRADY-DOWNES, | : |
| | : |
| Defendants. | : |

Devin L. Coleman, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

Rebecca Song, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

February 28, 2022
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

## I.  INTRODUCTION

Plaintiff Devin L. Coleman ("Plaintiff"), a former inmate at the James T. Vaughn Correctional Center (JTVCC) in Smyrna, Delaware, currently housed at the Howard R. Young Correctional Institution in Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1]  (D.I. 3)  He appears *pro se* and has been granted leave to proceed *in forma pauperis.*  (D.I. 5)  Before the Court is Defendants' motion for summary judgment.  (D.I. 142)  The matter is fully briefed.

## II.  BACKGROUND AND FACTS AS PRESENTED BY THE PARTIES

Defendants Kristene Brady-Downes and Michael Stanford were at all material times correctional officers at JTVCC.  Plaintiff alleges that while he was housed at JTVCC, and from April 16, 2018 through April 17, 2019, Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  (D.I. 3)  Plaintiff seeks compensatory and punitive damages.

Plaintiff was seen by JTVCC's medical staff on April 11, 2018, complaining of eye pain and light sensitivity.  (D.I. 144 at 15)  He was advised he would be provided a "memo" authorizing him to wear solar shields.  (*Id.*)  When Plaintiff was seen by R.N. Joana Bampo on May 18, 2018, he wore solar shields and stated, "he got them from commissary," and that he preferred solar shields from medical staff.  (*Id.* at 13)  Plaintiff was told by medical staff that he should obtain his solar shields from the commissary. (*Id.*)  A September 5, 2018 medical note states that Plaintiff "has a current order for

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988).

solar shields." (*Id.* at 12) On September 28, 2018, Plaintiff was examined by an ophthalmologist and diagnosed with lagophthalmos and dry eyes.[2] (D.I. 144 at 11, 20-24) The ophthalmologist recommended artificial tears and ointment to lubricate the dryness. (*Id.* at 11, 24)

During an October 19, 2018 medical visit, Plaintiff continued to complain of headaches and light sensitivity and requested solar shields. (*Id.* at 10) On November 14, 2018, Plaintiff was provided solar shields per medical provider order. (*Id.* at 10) Plaintiff testified that he also wore sunglasses and that an inmate can purchase non-prescription sunglasses at the prison commissary without medical approval. (*Id.* at 53) Plaintiff testified that in his mind sunglasses and solar shades are two different names for "the same thing."[3] (*Id.*)

JTVCC inmate housing rules require an inmate to remove sunglasses when indoors. (*Id.* at 5 ¶ 8.0.M. ("Authorized sunglasses . . . will be removed indoors . . . or when requested by any staff member.")). During the relevant times, medical memoranda were issued for Plaintiff to possess solar shields. (*Id.* at 17, 26) One medical memorandum, administratively approved on September 12, 2018 stated: "solar shields sensitivity to light due to left eye." (*Id.* at 17) The start date was April 16, 2018 and the end day was April 16, 2019 (*Id.*) The second medical memorandum states "solar shields . . . start date: October 19, 2018 end date: October 19, 2019." (*Id.* at 26)

---

[2] Patients affected with lagophthalmos are unable to fully close their eyelids, and may describe symptoms of dry and irritated eyes. *See* https://www.aao.org/eyenet/article/lagophthalmos-evaluation-treatment (last visited Feb. 4, 2022).

[3] In his Complaint, Plaintiff states, "I use the commissary shades more than the ones from medical cause the commissary shades make things darker the solar shield provided from medical seem[s] to just take yellow out of colors." (D.I. 3 at 7)

2

Neither medical memorandum stated that Plaintiff was allowed to wear solar shields or commissary sunglasses indoors. (*Id.* at 17, 26)

Prior to March 25, 2019, Brady-Downes had seen Plaintiff wear sunglasses indoors and switch to solar shields after Brady-Downes told him if he continued to wear the sunglasses it would result in disciplinary action. (D.I. 92 at 2) On March 25, 2019, Brady-Downes was on duty and saw Plaintiff wear sunglasses indoors as he headed to the shower. (*Id.* at 18, 54, 55) Plaintiff was told that the sunglasses he was wearing were not authorized by medical staff. (*Id.* at 28). Plaintiff removed the sunglasses and replied that he had a medical memorandum for the sunglasses. (*Id.* at 45)

At the time Sgt. Heather Sampson was present, and she accessed Plaintiff's records to look for medical memoranda. (D.I. 92 at 3, 5) She did not find a memo that approved Plaintiff's wearing of commissary sunglasses indoors and she called a medical staff member to verify this. (*Id.*) A nurse looked through Plaintiff's medical files, verbally confirmed that he did not have a medical memo to wear commissary sunglasses indoors, and informed Sampson that Plaintiff had a medical memo for light sensitivity and could wear prescribed solar shades. (D.I. 92 at 5; D.I. 144 at 27) Plaintiff was informed that there was no paperwork to confirm that he was allowed to wear commissary sunglasses indoors. (D.I. 92 at 2) Brady-Downes warned Plaintiff that he would receive a write-up if he continued to wear the sunglasses, as they were not medically authorized. (D.I. 144 at 28) Plaintiff was given the option to wear his prescribed solar shades to avoid being written up; instead he put the sunglasses back on his face. (D.I. 92 at 2; D.I. 144 at 28, 45) Brady-Downes issued Plaintiff a disciplinary report for lying and failing to obey an order and confiscated the sunglasses

3

as evidence. (D.I. 144 at 28) Plaintiff appealed, and the decision was reversed on the basis that "inmate has a medical memo for the solar shields." (D.I. 150-1 at 24)

Plaintiff did not ask Brady-Downes for medical attention and did not seek medical care after the sunglasses were confiscated, and it was not until March 28, 2019—three days later—when he submitted a sick call slip for eye pain. (D.I. 144 at 27, 31, 47) A few days after the March 25, 2019 incident Plaintiff purchased "another pair of commissary sunglasses" from another inmate. (*Id.* at 58) Medical records dated March, 2019 refer to an administrative sick call when Plaintiff inquired about a security memo for solar shields and commissary sunglasses. (D.I. 150-1 at 57) The note states Plaintiff "has security memos located in ichrt [sic]. Security staff made aware." (*Id.*)

On April 1, 2019, Stanford saw Plaintiff wearing sunglasses indoors in the chow hall. (*Id.* at 33, 58, 64) Stanford told Plaintiff that sunglasses were for outdoor use only and ordered Plaintiff to remove them. (*Id.*) Plaintiff refused, Stanford repeated the order for Plaintiff to remove the sunglasses, and Plaintiff again refused. (*Id.*) Stanford told Plaintiff that he could not wear the sunglasses indoors unless he had a prescription that approved sunglasses for indoor use, Plaintiff replied they were prescribed, and Stanford responded that Plaintiff was wearing commissary non-prescription sunglasses. (*Id.* at 33, 58, 59, 64) Stanford again asked Plaintiff to remove the sunglasses, and Plaintiff refused. (*Id.* at 33, 64) Stanford searched on the JTVCC's shared drive for any medical memoranda for Plaintiff. (*Id.* at 33) Stanford found one medical memo that stated that Plaintiff was allowed to have solar shades from the commissary, but the memo did not specifically state that Plaintiff was allowed to wear sunglasses indoors. Accordingly, Stanford called medical staff for clarification and was informed that Plaintiff

4

was allowed to use solar shields indoors until the memo expired on April 16, 2019. (*Id.* at 33, 65) The memo did not permit Plaintiff to wear commissary sunglasses indoors. (*Id.*) Stanford issued Plaintiff a disciplinary report for disorderly behavior and failing to obey an order. (*Id.*) Testimony was provided at the disciplinary hearing that Plaintiff did not have medical approval to wear sunglasses indoors. (*Id.* at 35)

At the time of the April 1, 2019 incident, Stanford did not know that Plaintiff had an eye condition or light sensitivity and did not know that the removal of Plaintiff's sunglasses would result in any danger or substantial risk of serious harm to Plaintiff's health or safety. (*Id.* at 65) Stanford did not confiscate Plaintiff's glasses. (*Id.*) Plaintiff did not inform Stanford that the removal of his sunglasses would result in any injury or pain. (*Id.* at 59, 65)

Plaintiff filed this action on April 17, 2019. (D.I. 3) A month later, on May 15, 2019, a memo for solar eye shields was approved with a start date of April 22, 2019 and an end date of October 22, 2019. (D.I. 150-1 at 43) The memo made no mention of wearing sunglasses indoors. (*Id.*) On November 18, 2019, Plaintiff obtained a memo allowing him to wear commissary sunglasses and prescribed solar shields indoors and outdoors with a start date of October 14, 2019 and an end date of October 14, 2020. (D.I. 144 at 40; D.I. 150-1 at 39-40) On December 20, 2019, Plaintiff presented for a follow-up visit with an ophthalmologist. (D.I. 144 at 42-48) The ophthalmologist observed a decrease in the lagophthalmos and no other "ocular abnormality present." (*Id.*).

Defendants move for summary judgment. (D.I. 142) Plaintiff opposes. (D.I. 150)

### III.   Legal Standards

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

IV. **Discussion**

   A. **Eleventh Amendment Immunity**

Plaintiff brings suit against Defendants in their individual and official capacities. Defendants move for summary judgment on the official capacity claims. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). In addition, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Accordingly, § 1983 claims for monetary damages against a state official in his official capacity, like Defendants, are barred by the Eleventh Amendment. *See id.*

7

Summary judgment on this issue is appropriate as a matter of law as Defendants have Eleventh Amendment immunity for the official capacity claims raised against them. Defendants' motion for summary judgment on the issue will be granted.

## B.  Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment obligates jail authorities to provide medical care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because he "was punished for wearing medically authorized sunglasses" and "the glasses were taken from him, and Defendants were aware that there were medical memos authorizing the use of the glasses at issue" by him indoors. D.I. 150 at 1. Defendants move for summary judgment on the grounds that Plaintiff cannot show that his eye condition is a serious medical need, he fails to show that Defendants were deliberately indifferent, and Defendants should not be liable because they acted reasonably. I need address only the third argument.

"[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The undisputed material facts establish that both Defendants acted reasonably here. Both Defendants asked Plaintiff to remove his sunglasses because prison rules prohibit inmates from wearing sunglasses indoors. Both Defendants searched for a medical memo to determine if Plaintiff was allowed for medical reasons to wear sunglasses indoors. No such memo existed at the time of the incidents in question. Memos authorized Plaintiff at that time to wear solar shields, not sunglasses. *Cf. Martin v.*

8

*Hedgpeth*, 2015 WL 2266486, at *5 (N.D. Cal. May 14, 2015) (distinguishing tinted glasses from solar shields).

In addition, Stanford was unaware that Plaintiff had an eye condition or light sensitivity. Brady-Downes knew that Plaintiff has been prescribed solar shields, but not sunglasses, for indoor use. And, both Defendants reasonably relied upon information provided to them by medical staff. Non-medical prison officials are generally justified in relying on the expertise and care of prison medical providers. *Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015). Also, both Defendants gave Plaintiff the option to replace the sunglasses with solar shields. Plaintiff, by his own admission, refused those offers and continued to wear the sunglasses.

Notably, Plaintiff did not ask Defendants for medical attention at the time of either occurrence. (With regard to the Brady-Downes incident, Plaintiff did not seek medical attention until three days later.) Nor is there record evidence that either Defendant had reason to believe that Plaintiff would incur substantial risk of serious harm if he did not wear sunglasses or if he wore solar shields instead of sunglasses. In short, no reasonable jury could find that either Defendant acted unreasonably during the incidents in question. Both Defendants were aware that Plaintiff was flouting prison rules, and both reached out to medical personnel before issuing Plaintiff disciplinary reports.

Plaintiff submitted a sworn statement in opposition to Defendants' motion. (D.I. 151 at 1-5) An affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters

9

stated." Fed. R. Civ. P. 56(c)(4). In supporting a motion for summary judgment, "the affiant must ordinarily set forth facts, rather than opinions or conclusions." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). "An affidavit that is 'essentially conclusory and lacking in specific facts' is inadequate to satisfy the movant's burden." *Id.* (citations omitted).

Plaintiff states in the declaration that he "spoke to Sgt. Stanford about the medical necessity of [his] glasses on multiple occasions prior to" the April 1, 2019 incident. But even if that were the case, in light of the JTVCC's ban on wearing sunglasses indoors, it would have been reasonable for Stanford to reject what Plaintiff told him and rely instead on the memo that authorized Plaintiff to wear solar shields and on the JTVCC medical staff who told Stanford that Plaintiff was allowed for medical reasons to wear solar shields, not sunglasses.

Plaintiff also relies on a March 30, 2019 medical note as evidence that Standard was aware of a medical memorandum. The note states, "Patient has security memos located in ichrt. Security staff made aware." (D.I. 150-1 at 57) The note, however, does not identify a particular correctional officer, and provides no other facts to support these statements, some of which are conclusory.

Plaintiff's declaration further states that Brady-Downes did not verify Plaintiff's medical memo status; that he spoke to Brady-Downes on several occasions about his medical condition and the need for glasses; and that after the confiscation Plaintiff submitted several sick calls for headaches due to the lack of glasses. (D.I. 151 at 1-5) Plaintiff again relies upon the March 30, 2019 medical note to support his statements. The note was entered several days after the March 25, 2019 incident and does not

10

refute other documents that Brady-Downes contacted medical staff at the time of the March 25, 2019 incident. In addition, the statements do not contain a bases for the facts asserted, are conclusory, and are not supported by the record.

Finally, although a medical memorandum allowed Plaintiff to wear sunglasses and solar shields indoors, it was not issued until after the two incidents at issue and, therefore, is not relevant. Nor is it relevant that the disciplinary report issued by Brady-Downes that resulted in Plaintiff's finding of guilt was later reversed. The Court looks at the events as the time they occurred. For both incidents Defendants issued disciplinary reports based upon the fact that Plaintiff was not allowed to wear sunglasses indoors, refused orders to remove them, and continued to wear them.

Based upon the record evidence, no reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs or that Defendants acted unreasonably. Therefore, the Court will grant Defendants' motion for summary judgment on the Eighth Amendment claim.

## V.  CONCLUSION

For the above reasons, the Court will grant Defendants' motion for summary judgment.[4] (D.I. 142)

An appropriate order will be entered.

---

[4] I will not address the issue of qualified immunity given that summary judgment is appropriate on other grounds.

11